IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| | * |
| LOCAL NO. 333, INTERNATIONAL | |
| LONGSHOREMAN'S ASSOCIATION | * |
| AFL-CIO, ET AL., | |
| | * |
| Plaintiffs, | |
| | * |
| v. | CIVIL NO.: WDQ-06-0670 |
| | * |
| GARRIS S. MCFADDEN, | |
| | * |
| Defendant. | |
| | * |

* * * * * * * * * * * * *

MEMORANDUM OPINION

Local No. 333, International Longshoreman's Association, AFL-CIO, ("Local 333"); Horace T. Alston, Lead Trustee, Local 333; and John A. Shade, Sr., Co-Trustee, Local 333, (trustees together, the "Trustees")[1] sued Garris S. McFadden for: 1) violating § 501(a) of the Labor Management Reporting and Disclosure Act[2] (the "LMDRA"); 2) constructive trust; and 3) detinue arising out of his involvement in a scholarship fund intended to benefit the union.

Pending is the Plaintiffs' motion for summary judgment. For the reasons discussed below, the motion will be granted in part and denied in part.

_____

[1] On November 1, 2006, the Court granted plaintiff Ronald J. Barkhorn's Oct. 11, 2006 motion for voluntary dismissal.

[2] 29 U.S.C. § 501(a).

I.   Background

     This case involves money raised for scholarships for members

of Local 333 and their dependents.  Instead of being put to its

original purpose, the money languished, unused, in certain bank

accounts for over two decades.

     On August 30, 1982, Articles of Incorporation of the

Baltimore International Longshoremen's Association Scholarship

Fund, Inc., (the "Art. of Incorp.") were filed with the State

Department of Assessment and Taxation of Maryland and created the

"Scholarship Fund."  Mem. Supp. Mot. Ex. B (Art. of Incorp.).

McFadden was an incorporator and one of the directors of the

Scholarship Fund.  *Id*.  The Scholarship Fund was created "[t]o

provide funds for employees or dependants of employees . . . who

wish to continue their education by attending undergraduate,

apprentice or other training programs in accredited institutes,

colleges and universities . . .."  *Id*. ¶ 3(c).  The Scholarship

Fund is the corporation formed to manage the creation and award

of scholarships.

     A dinner dance (the "Dinner-Dance") was held to raise money

for the Scholarship Fund and that money was placed in a bank

account (the "Harbor Bank Account").  Mem. Supp. Mot. Ex. A (1982

letter from Garris McFadden regarding the Scholarship

Foundation's Annual Dinner-Dance); Ex. G at 37, 44 (Deposition of

Garris McFadden).  A scholarship fund was also mentioned in the

2001 agreement between the Steamship Trade Association of
Baltimore and several International Longshoremen's Association
locals in the Baltimore area (the "Contractual Scholarship").
McFadden Dep. at 29.  To fund the Contractual Scholarship, five
cents per man-hour was to be directed to the fund from April 1,
1984 to March 31, 1985.  *Id*.

Although two scholarships were granted in 1982, *id*. at 25-
26, no other scholarships have been granted.  *Id*. at 88.  On
October 15, 1986, the Art. of Incorp. were forfeited, but the
Scholarship Fund's money was never distributed in accordance with
the dissolution provisions of the Art. of Incorp.

McFadden held various leadership positions in Local 333
beginning in 1972.  McFadden Dep. at 11.  McFadden was the
president of Local 333 in the 1980s and again beginning in
January 2004.  *Id*. at 13, 89.  In particular, he was president at
the time he wrote the invitation letter for the Dinner-Dance,
which stated that he was "Founder and General Chairman" of the
Scholarship Fund.  *Id*. at 14.

The Harbor Bank Account was named "International
Longshoremen's Association Local 333 - Scholarship Fund."  Mem.
Supp. Mot. Ex. G-11 (bank statements).  On February 12, 1993,
this account (No. 4000100599, Tax ID No. 52-1268671) held
$26,634.94.  *Id*.  This was the money raised in 1982 for the
Scholarship Fund.  McFadden Dep. at 97.

Sometime between 1993 and 2003 McFadden moved the money in the Harbor Bank Account to a 'Business COD Certificate' account named "Garris McFadden International Longshoremen's Association" (No. 13091, Tax ID No. 52-1268671) (the "COD"). McFadden Dep. at 80; Mem. Supp. Mot. Ex. G-29 (bank statement). As of January 25, 2005, the COD had $40,596.80. Mem. Supp. Mot. Ex. H. On or about July 17, 2005 approximately $25,000 was removed from this account and placed in a Sun Life annuity account. McFadden Dep. at 81-82, 188. McFadden admits that the money is not his. McFadden Dep. at 119 (also stating that he is interested in seeing the money maintained and following the law).

II. Analysis

The Plaintiffs have moved for summary judgment, arguing that McFadden: 1) violated section 501(a) of the LMRDA; and 2) unjustly detained the Scholarship Fund's money. They urge the Court to create a constructive trust for the Scholarship Fund's money. McFadden responds that: 1) the Trusteeship is invalid; 2) the Plaintiffs waited too long to sue.[3]

---

[3] In his Response, McFadden states in several locations that the suit is not timely. He mentions, without citation or further discussion, that Bankhorn brought this suit in the 90s. Response Mem. at 2. McFadden does not, however, discuss the violation of any particular statute of limitations nor does he offer evidence supporting such a contention. Moreover, he provides no evidence of or argument regarding the proof required for the doctrine of laches. Indeed, as McFadden has not spent any of the money and acknowledges that it is not his, he would fail to show the prejudice required to prove laches. *Ross v. State Bd. of*

A.   Standard of Review

Under Rule 56(c), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The opposing party, however, must produce evidence upon which a reasonable fact finder could rely. *Celotex*, 477 U.S. at 317.  The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment. *Anderson*, 477 U.S. at 252.

When dealing with a *pro se* party, the Court construes their pleadings liberally. *Slade v. Hampton Roads Regional Jail*, 407 F.3d 243, 252 (4th Cir. 2005).  *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

B.   Validity of the Trusteeship

---

*Elections*, 387 Md. 649, 670 (2005).

Should the Trusteeship be invalid, the Trustees might not have standing to bring this suit.  For the reasons discussed below, however, McFadden has not successfully challenged the Trusteeship.

Under the LMRDA,

> Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice . . . or otherwise carrying out the legitimate objects of such labor organization.

29 U.S.C. § 462.  Under § 464(a), a Trusteeship may be challenged by the Secretary of the Department of Labor upon written complaint by a member of a labor organization or by a member bringing a civil action.  Although neither of these avenues has been taken, the Court will assess the merits of McFadden's argument.

To attack the validity of the trusteeship within 18 months of its establishment, McFadden must show "clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 462."  29 U.S.C. 464(c).  The Trusteeship was established in June 2005.  Paper No. 26 (November 14, 2006 letter from plaintiffs' counsel to the Court).  The suit was initiated within the eighteen month period.

On May 27, 2005, however, a Committee of the ILA had recommended that "the evidence does not warrant placing a trustee

6

over the Local at this particular time." Response Mem. Ex. 27

(though the exhibit is incomplete, it appears to be a report from

a committee of ILA national charged with investigating Local

333).  The proximity between the recommendation and the creation

of the trusteeship is not clear and convincing proof that the

trusteeship was not created in good faith to effect a § 462

objective.

C.   Section 501(a)

     Whether a union may assert a cause of action under section

501 of the LMRDA is not clear.  *International Union of*

*Electronic, Elec., Salaried, Mach. & Furniture Workers, AFL-CIO*

*v. Statham*, 97 F.3d 1416, 1418 (11th Cir. 1996) (citing numerous

cases that find that a union either is or is not a proper

plaintiff under section 501).

     Section 501(a) states that, *inter alia*, the officers, agents

and representatives of a labor organization "occupy a position of

trust." § 501(a).  Moreover, such individuals have a duty:

> [T]o hold [the labor organization's] money and property
> solely for the benefit of the organization and its members
> and to manage, invest, and expend the same in accordance
> with its constitution and bylaws and any resolutions of the
> governing bodies adopted thereunder, to refrain from dealing
> with such organization as an adverse party or in behalf of
> an adverse party in any matter connected with his duties.

*Id*.

     Section 501(b) authorizes a member of a union to sue when,

*inter alia*, an officer allegedly violated the duties in

7

subsection (a) and "the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization."  Section 501(b) does not explicitly grant or withhold a union's right to sue.  However, as an individual's right to sue is conditioned upon the labor organization or its governing board's failure to sue or otherwise recover damages, the subsection implicitly acknowledges that unions may sue under section 501.  Accordingly, this Court agrees with the court in *International Longshoremen's Ass'n, S.S. Clerks Local 1624, AFL-CIO v. Va. Intern. Terminals, Inc.*, 914 F.Supp. 1335 (E.D. Va 1996), and thus finds that Local 333 may sue McFadden.

Here, a reasonable jury could only find that McFadden has held the Scholarship Fund's money and that his maintenance of the money through the various bank accounts has provided no benefit to Local 333 or its members.  Accordingly, McFadden has violated section 501(a) of the LMRDA.

D.   Constructive Trust

As a constructive trust is a remedy and not a cause of action, summary judgment of Count II -- Constructive Trust will be denied.  The creation of a constructive trust, as a remedy, will be considered.

E.   Detinue

Detinue "is simply a possessory action for the recovery of personal chattels unjustly detained." *Durst v. Durst*, 232 Md. 311, 314 (1963) ("Durst II").   In Maryland, "[t]he common-law action of detinue lies for the recovery of personal chattels unjustly detained by one who acquired possession of them either lawfully or unlawfully . . .." *Durst v. Durst*, 225 Md. 175, 178 (1961) ("Durst I").   Indeed, "[i]t is based on right of possession in the plaintiff." *Id.*

Construing McFadden's Response liberally, he argues that there has been too great a delay in filing this action.   In order to ascertain when limitations began to run against the Plaintiffs, it is necessary to determine when McFadden's holding of the money became wrongful. *Id.* at 178-79.   "In order to establish a constructive conversion, where the original holding was not tortious, it is necessary to show a demand for the return of the chattel by the rightful owner, and a refusal by the wrongful holder, or some assertion of an adversary right by the holder." *Id.* at 179.   Once that adverse claim is made, conversion is established and the suit is barred if not filed within three years. *See id.* at 180; Md. Code Ann., Cts. & Jud. Proc. § 5-101.

On March 14, 2006, the Complaint was filed.   Therefore, if demand and refusal was made prior to March 15, 2003, then the

statute of limitations has run.  As the earliest challenge came in the form of Local 333 member Ronald Barkhorn's December 2003 letter to the Executive Board of Local 333, the suit survives a statute of limitations challenge.  Mem. Supp. Mot. Ex. G-14 (Bankhorn's formal complaint seeking investigation).

As personal chattels may include cash, *Baldwin v. Hopkins*, 172 Md. 219, 222 (1937), a detinue action is appropriate.  As McFadden was one of the original holders of the Harbor Bank Account and was Founder and Chairman of the Scholarship Fund, he acquired possession of the account lawfully.  However, the funds were raised to create scholarships and McFadden admits that none have been awarded since 1982.  McFadden Dep. at 88.  At some point, McFadden became the only named individual for the Harbor Bank Account before the COD and other accounts were created.  McFadden Dep. at 41-42.  McFadden's decision, as the sole person in control of the money, to withhold the money contravenes the purpose of the Scholarship Fund as set forth in the Art. of Incorp.  McFadden's omission, as the sole remaining director of the Scholarship Fund, to distribute the corporation's assets contravenes the dissolution paragraph (¶ 7) of the Art. of Incorp.  The decision and omission together clearly represent an "unjust detainment" of the funds intended to become scholarships.  Accordingly, summary judgment will be granted as to Count III -- Detinue.

III. Conclusion

For the reasons discussed above, the Plaintiffs' motion for summary judgment will be granted in part and denied in part despite the absence of bad faith on McFadden's part.  To ensure that all proper funds are surrendered by McFadden, an accounting will be submitted to the Court.  The Court will impose a constructive trust upon the various accounts to the extent determined by the accounting.  The funds shall then be distributed in accordance with Art. of Incorp. ¶ 7.


<u>March 6, 2007</u>                      <u>          /s/          </u>
Date                                William D. Quarles, Jr.
                                    United States District Judge

11